**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-13904
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

NICHOLAS P. SMITH,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:24-cr-00014-SPC-NPM-1

_____

Before JILL PRYOR, BRANCH, and ABUDU, Circuit Judges.

PER CURIAM:

Nicholas P. Smith appeals his conviction for possession of fentanyl with intent to distribute, under 21 U.S.C. § 841(a)(1), (b)(1)(C). On appeal, Smith challenges the trial court's denial of his

2                Opinion of the Court                24-13904

motion to suppress fentanyl found on his person during a pat down following a traffic stop.  He argues that the district court erred in denying his motion to suppress because there was insufficient probable cause to seize and search him and his vehicle.  After careful review, we affirm.

### I. FACTUAL BACKGROUND & PROCEDURAL HISTORY[1]

On September 5, 2023, while on patrol in an unmarked vehicle, two police officers with the City of Fort Myers, Florida, Police Department observed a black Chevy Tahoe with windows so heavily tinted that the officers "could not see any of the occupants inside."  The lead officer turned his body-worn camera on, and the officers began following the Tahoe.  The Tahoe, which was stopped with its tires in the crosswalk waiting to turn left, accelerated through an intersection after the signal turned red.  Consistent with protocol, the officers turned on their siren and radioed other vehicles in their unit for assistance.  A K-9 officer responded to the scene.  The officers who stopped the car stated that it had illegally tinted windows, that its driver had improperly stopped in a crosswalk, and that it had run a red light.

---

[1] When reviewing the denial of a motion to suppress, we accept the version of the facts adopted by the district court "'unless [they are] contrary to the laws of nature, or . . . so inconsistent or improbable on [their] face that no reasonable factfinder could accept [them].'"  *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quoting *United States v. Eddy*, 8 F.3d 557, 580 (7th Cir. 1993)).  Here, because we find no clear error, for the reasons we explain below, we describe the facts consistent with the district court's findings, based on the evidence presented at the hearing on the motion to suppress.

24-13904                    Opinion of the Court                    3

An officer told the driver, Smith, that he was being stopped "for two reasons": (i) "the tint" and (ii) "for the red light."  An officer asked Smith for his driver's license and insurance information. Another officer tested the vehicle's tint.  According to the meter, the driver's side and rear passenger's side windows were within the legal tint limit.[2]

The officers asked Smith, who was sitting inside the vehicle, if he had a medical marijuana card.  Smith said no.[3]  Unprompted, Smith stepped out of the vehicle and said "I'ma let y'all do y'all thing."  Smith was "trembling a little bit," and expressed frustration regarding the way in which he was stopped.

While another officer prepared a citation, the K-9 dog circled Smith's vehicle and alerted the officers to a scent of narcotics.  As the supervisory officer retrieved gloves to conduct a search of the vehicle, Smith "start[ed] to get a little more animated" and "nervous."  The officer opened the vehicle's door, "stuck [his] head inside," and smelled what he believed to be burnt marijuana based

---

[2] At this point in the body-worn camera footage, the officer muted his body camera for approximately 30 seconds and had a conversation—which is not recorded—with another officer, who was holding Smith's identification card.

[3] Florida law permits possession of marijuana under some circumstances. Without a medical marijuana card, however, marijuana possession is a criminal misdemeanor in Florida.  FLA. STAT. § 381.986; *see also Fla. Dep't of Health v. Florigrown, LLC*, 317 So. 3d 1101, 1106–11 (Fla. 2021) (describing Florida's medical marijuana scheme); *cf. United States v. Trevino*, 7 F.4th 414, 419 (6th Cir. 2021) ("State law aside, marijuana remains illegal under federal law.").

upon his training and experience.  Inside, the officer found marijuana "shake" on the driver's seat, underneath the driver's seat floor mat, and on the passenger side of the vehicle.[4]

According to the officers, Smith appeared agitated.  While the officers searched the vehicle, Smith attempted to light a cigar.  The supervising officer proceeded to pat down Smith and found "a hard substance" between his legs.  The substance was a bag of fentanyl.  While being transported to the police station, Smith threw what appeared to be more narcotics out of the police cruiser's window which were not discovered during the pat-down.

A grand jury indicted Smith on possession with intent to distribute a mixture containing fentanyl and para flourofentanyl.  Represented by counsel, Smith moved to suppress "all evidence recovered as a result of" the traffic stop and made arguments similar to those that he raises on appeal.  After holding a hearing on the motion, the district court denied it for reasons explained below.  After a bench trial, the district court found Smith guilty.  The court sentenced Smith to 65 months' imprisonment.  Smith appealed, challenging only the denial of his motion to suppress.[5]

---

[4] According to the officers, marijuana "shake" is leaf debris from the marijuana plant.  If a person smokes inside of a vehicle and then brushes off their pants, the marijuana shake will fall on the vehicle floor.

[5] Smith does not challenge his sentence on appeal.  *See, e.g., United States v. Florida*, 172 F.4th 1201, 1236 (11th Cir. 2026) ("In our adversarial system, we decline to raise and address *sua sponte* a non-jurisdictional issue that a party has not presented to us.").

## II. STANDARDS OF REVIEW

"[A] district court's denial of a motion to suppress" presents "a mixed question of law and fact." *United States v. Delancy*, 502 F.3d 1297, 1304 (11th Cir. 2007) (citing *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006)). "We review the district court's findings of fact for clear error and construe the evidence in the light most favorable to the party prevailing below—here, the government." *Id.* "We review the district court's interpretation and application of the law *de novo*." *Id.*

Clear error is a very deferential standard of review. To be clearly erroneous, a finding of fact must leave us with a "definite and firm conviction that a mistake has been committed." *United States v. Isaac*, 987 F.3d 980, 990 (11th Cir. 2021) (quoting *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010)); *see also OHI Asset (VA) Martinsville SNF, LLC v. Wagner (In re Wagner)*, 115 F.4th 1296, 1303 (11th Cir. 2024) ("A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985))). "Therefore, '[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *In re Wagner*, 115 F.4th at 1303 (quoting *Anderson*, 470 U.S at 574). That we may have "reached a different result" based "on the same evidence" is not enough to "justify setting [the district court's] finding aside"

6                    Opinion of the Court                    24-13904

under clear error review. *Mach. Rental, Inc. v. Herpel (In re Multiponics, Inc.)*, 622 F.2d 709, 723 (5th Cir. 1980).[6]

## III. DISCUSSION

The only issue on appeal is whether the district court properly denied Smith's motion to suppress. We conclude it did not err, so we affirm.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. A traffic stop is a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). However, a traffic stop is a constitutional seizure when it is either: (i) based upon probable cause that a traffic violation has occurred; or (ii) justified by reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008); *see also United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003) (same).

The standard for probable cause is satisfied when there is "a fair probability that contraband or evidence of a crime will be found." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The standard for a stop under

---

[6] Decisions issued by the former Fifth Circuit are binding in this Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1210 (11th Cir. 1981) (*en banc*).

*Terry* is "less demanding than that for probable cause." *Id.*; *see also United States v. Montoya de Hernandez*, 473 U.S. 531, 541 (1985).

Florida law prohibits drivers from stopping or parking vehicles on crosswalks "[e]xcept when necessary to avoid conflict with other traffic, or in compliance with law or the directions of a police officer or official traffic control device." FLA. STAT. § 316.1945. In addition, it is a traffic violation in Florida to drive through an intersection when the traffic signal is red. *Id.* § 316.075(c)(1).

Smith claims the officers lacked probable cause to stop his vehicle. However, the officers had probable cause to stop Smith once they observed him violating Florida law by stopping in a crosswalk and running a red light. *Harris*, 526 F.3d at 1338 (explaining that officers have probable cause to stop the vehicles when they observe traffic violations); FLA. STAT. §§ 316.1945, 316.075(c)(1).[7] While Smith argues that his conduct was cautious and completely compliant with relevant Florida law, he does not show clear error in the district court's findings of fact on this issue. *See Isaac*, 987 F.3d at 990; *In re Wagner*, 115 F.4th at 1303; *In re Multiponics*, 622 F.2d at 723.

The district court explained that "it appears [Smith] did not proceed through the intersection with caution during a flashing yellow light. Rather, he stopped on the crosswalk in violation of

---

[7] We need not decide whether the officers also had probable cause based on the window tint. *See, e.g., United States v. Thomas*, 160 F.4th 1177, 1183 (11th Cir. 2025) ("[A]ny crime for which a reasonable policeman would have probable cause will support [an] arrest.").

Florida Statute § 316.1945(1)(a) then proceeded through the intersection during a steady red light in violation of Florida Statute § 316.075(1)(c)." Smith does not identify evidence showing that the district court's view of what happened is incorrect, let alone sufficient contrary evidence that produces a "definite and firm conviction that a mistake has been committed." *In re Wagner*, 115 F.4th at 1303 (quoting *Anderson*, 470 U.S at 573). Based on the district court's factual findings, which were not clearly erroneous, we affirm the district court's conclusion that the officer had probable cause for the traffic stop because they reasonably believed Smith had violated Florida law when he turned left.

Smith next claims that, notwithstanding the legality of the traffic stop, the officers lacked probable cause to search his vehicle. Warrantless searches are *per se* unreasonable, but there are certain situations where warrants are not constitutionally required. *United States v. Watts*, 329 F.3d 1282, 1285 (11th Cir. 2003). As relevant here, police officers may search a vehicle if it "is readily mobile and probable cause exists to believe it contains contraband." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (citing *California v. Carney*, 471 U.S. 386, 393 (1985)). However, officers cannot unreasonably extend a traffic stop to come up with probable cause to search a car; traffic stops must be "limited in scope and duration." *United States v. Campbell*, 26 F.4th 860, 881 (11th Cir. 2022) (*en banc*) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion)). Thus, even if police have reasonable suspicion and, pursuant to that reasonable suspicion, "make a traffic stop, they do not have unfettered authority to detain a person indefinitely." *Id.*

24-13904                Opinion of the Court                9

Here, as the district court found, officers had probable cause to search Smith's vehicle and "the automobile exception to the Fourth Amendment's warrant requirement" applied because the car was readily mobile. *Labron*, 518 U.S. at 940. A canine alerted officers to the smell of drugs inside Smith's vehicle, and we have "long recognized that 'probable cause arises when a drug-trained canine alerts to drugs.'" *United States v. Tamari*, 454 F.3d 1259, 1265 (11th Cir. 2006) (quoting *United States v. Banks*, 3 F.3d 399, 402 (11th Cir. 1993)); *see also United States v. Braddy*, 11 F.4th 1298, 1312 (11th Cir. 2021). Along with probable cause, Smith does not meaningfully challenge the district court's finding that his car was "readily mobile." *Labron*, 518 U.S. at 940; *Watts*, 329 F.3d at 1285. Further, the stop was not unnecessarily prolonged because the canine was present from the beginning of the traffic stop, which lasted three and a half minutes once the canine began its detection for illegal substances. *See Campbell*, 26 F.4th at 881; *see also Rodriguez v. United States*, 575 U.S. 348, 354 (2015) ("Authority for [a traffic stop] thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."). Therefore, the search of Smith's vehicle was also reasonable.

Finally, Smith claims the officers lacked probable cause to arrest him for marijuana possession because the smell of marijuana is insufficient to provide probable cause and the marijuana "shake" he was arrested for was not visible. However, we have held that "the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search." *United States v. Lueck*, 678 F.2d 895, 903 (11th Cir. 1982) (first citing *United States v. Rivera*, 595 F.2d

1095, 1099 (5th Cir. 1979); then citing *United States v. Barnard*, 553 F.2d 389, 391 (5th Cir. 1977); then citing *United States v. Diaz*, 541 F.2d 1165, 1166 (5th Cir. 1976); and then citing *United States v. Coffey*, 520 F.2d 1103, 1104 (5th Cir. 1975)).[8]  In addition, as the district court explained, the officers did not *solely* rely on the smell of marijuana.  Instead, "they relied on [Smith's] behavior, the K-9's alert, the smell of marijuana, and the marijuana 'shake' found where he was sitting."  Under these circumstances, the officers had probable cause to search and arrest Smith.[9]

---

[8] In response, Smith asserts that "in the State of Florida" the smell of marijuana does not give rise to probable cause.  Yet, he does not develop any argument that there has been a change in law sufficient to undermine the cases in the preceding citation (and others) which hold the opposite.  *See, e.g., Cont'l Tech. Servs., Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991) ("[A] simple contention that [certain] law controls does not present an argument based on [that] law.").  In addition, this argument was not raised below.  For these reasons, we conclude Smith has not shown error in this respect either.

[9] For the first time in his reply brief, Smith requests that we certify the question of whether he violated Florida's crosswalk statute, FLA. STAT. § 316.1945, to the Florida Supreme Court.  However, we generally do not address issues raised for the first time in reply briefs.  *United States v. Chalker*, 966 F.3d 1177, 1195 n.8 (11th Cir. 2020); *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003).  Smith did not mention certification in his initial brief, forfeiting the issue.  Moreover, Smith does not provide any particular reason why we should consider the forfeited issue in his reply brief.  *Campbell*, 26 F.4th at 873 (explaining that we rarely consider forfeited issues).  Accordingly, we decline to consider his arguments for certification.  *See United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004) ("[T]he rule requiring that issues be raised in opening briefs 'serves valuable purposes, as do all of the procedural default rules, which is why we regularly apply them.'" (citation omitted)), *overruled in part on other*

## IV. CONCLUSION

For the reasons we have explained, the district court did not err in denying Smith's motion to suppress.  Accordingly, we affirm Smith's conviction.

**AFFIRMED.**

---

*grounds by United States v. Durham,* 795 F.3d 1329, 1330 (11th Cir. 2015) (*en banc*).